UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Case No. CR405-59 |
| MARTIN BRADLEY, Jr., et al., | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

Defendant Martin Bradley, Jr. has filed a motion to suppress the evidence seized by government agents during the execution of a search warrant at his residence, contending that no probable cause existed to connect his home to the items sought in the warrant. He also challenges the warrantless search of his briefcase, alleging that the search was performed without his consent. Doc. 167.[1] There is no merit to either

---

[1] Defendant also challenges the search of his residence on the ground that the warrant affidavit failed to establish probable cause to believe that any crime had been committed. Doc. 167 at 5-8. The Court has previously addressed this claim, which was raised by all defendants in the case. Docs. 296, 324. Although at the time of those rulings the Court had reserved consideration of defendant's motions because his claim of incompetency to stand trial had yet to be resolved, the Court recently found that defendant is in fact competent. Doc. 349. Because the Court has previously given extended discussion to the jointly-asserted claim that there was no probable cause to

contention.

## I. Probable Cause to Search Residence

Defendant objects to the warrant-based search of his residence at 616 Herb River Drive, Savannah, Georgia, claiming that the warrant affidavit "reveals no connection between the premises and alleged illegal transactions and is completely devoid of any factual allegation that would provide reasonable probable cause to believe that any of the items sought would be found" in his home. Doc. 167 at 4. The affidavit accompanying the search warrant, however, demonstrates a nexus between defendant's residence and the evidence sought sufficient to establish a probable cause basis for the issuance of the warrant.

The search warrant affidavit[2] reflects that defendant was engaged in a complex scheme to defraud pharmaceutical manufacturers through the practice of "drug diversion." See Doc. 296 (summarizing the diversion scheme set forth in the affidavit). The affidavit described a continuous

---

believe that any federal crimes were committed, it will not burden the record by repeating that discussion here. Those prior rulings are deemed to apply to this defendant, and his right to challenge those rulings on appeal is preserved.

[2]The affidavit for 616 Herb River Drive, one of the 8 virtually identical affidavits submitted by agents seeking warrants in a multi-district fraud investigation, was executed by Special Agent Michael Palmer.

course of fraudulent conduct over many years that generated enormous profits for defendant and his fellow conspirators. Palmer Aff. ¶¶ 20, 24-25, 47, 52, 58-59. According to the affidavit, defendant and his business associates took elaborate measures to conceal their fraud, including the use of offshore bank accounts, foreign trusts, deceptive accounting practices, and various other methods to launder their ill-gotten profits. Id. ¶¶ 20, 59, 61-62, 65, 71-72.

During conversations which were tape recorded by an undercover agent, Bradley acknowledged that he and his son had made a lot of money through various illicit means which were "'buried in history.'" Id. ¶ 59. He used some of the proceeds of his illegal activities to purchase a 20,000 square foot home located in an "exclusive neighborhood" in Savannah, Georgia. Id. ¶¶ 47, 59.[3] It was this home that the agents were seeking authority to enter and search.

Based on his training and experience, Agent Palmer offered his opinion that it was common for individuals engaged in such lucrative fraudulent activities to conceal proceeds and evidence of financial

---

[3]Defendant also invested his diversion profits in "a beach house, a farm, a ski lodge, a 65-foot yacht, and several airplanes." Id. ¶ 59.

transactions in their residences. Id. ¶ 60. Further, the agent noted that personal records of credit card purchases and other financial transactions—of the type typically maintained in a residence—are "extremely useful" in money laundering and tax investigations. Id. ¶ 34. The investigation established that defendant funneled his "diversion" income into foreign bank accounts, which he accessed using a credit card. Id. ¶¶ 20, 61. Postal records developed through a "mail cover" of defendant's residence demonstrated that defendant regularly received mail at his home of a financial nature, including records from banks, investment firms, and insurance and credit card companies. Id. ¶ 36. When giving a government informant a tour of his home, defendant pointed out his personal office, which contained a desk and typical office furniture as well as a laptop computer. Id. ¶ 63.

Probable cause requires a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983); United States v. Tobin, 923 F.2d 1506, 1510 (11th Cir. 1991) (stating that probable cause exists "where the facts lead a reasonably cautious person to believe that the search will uncover evidence

of a crime") (internal quotes and citations omitted). In the instant case, the affidavit meets this standard and establishes probable cause to believe that evidence related to the unlawful diversion scheme would be found within defendant's residence. It was reasonable to believe that defendant maintained records relating to both his business and personal financial transactions at his home. Indeed, one of the goals of the criminal enterprise was to launder the "diversion" profits by disguising the proceeds as legitimately acquired assets and personal investments, and defendant acknowledged that his Savannah residence had been purchased with such proceeds. Since the affidavit demonstrated a clear link between defendant's personal financial affairs and the vast proceeds of the fraudulent scheme, the agents were entitled to enter the home in order to search for that evidence. For these reasons, the Court finds that probable cause did in fact exist to support a warrant for the search of defendant's home.

## II.   Search of the Briefcase

When the agents arrived at 616 Herb River Drive to execute the search warrant for defendant's residence, Special Agent Gwendolyn Weston, the leader of the search team, encountered defendant and attorney

Sherwin Robin at the front door. She advised them that the agents had a warrant authorizing a search of the residence. Robin asked to examine a copy of the warrant, which the agent provided.

As the agents initially approached the residence, they observed defendant's black Lincoln Continental parked in the driveway. After the residence search had proceeded for some twenty to thirty minutes, Agent Weston walked around the Lincoln and noticed a leather briefcase lying on the front passenger seat. When she began to communicate with her command center to ascertain whether another warrant would be necessary to search the vehicle, defendant volunteered that he would consent to a search of the car. Agent Weston provided a consent form to attorney Robin, who reviewed the form before furnishing it to his client. The form advised defendant that he had "the right to refuse to permit us . . . to search your . . . conveyance" and stated that if permission to enter and search the conveyance was granted, "any incriminating evidence that we find may be used against you in court." Govt. Ex. 2. The "waiver" portion of the form contained a single line to describe the "conveyance to be searched." On that line the agent hand wrote "Black Lincoln Continental" along with the vehicle's tag number and VIN number.

After securing defendant's signature on the consent form, Agent Weston entered the vehicle and retrieved the briefcase. She testified that she then obtained defendant's verbal consent to search the briefcase. When she asked defendant for the combination to the briefcase, he responded that it was unlocked. Neither defendant nor his attorney voiced any objections to the search of the briefcase. The Court specifically credits this testimony and finds that the briefcase was searched with defendant's express consent.[4]

---

[4]Defendant argues that there are inconsistencies between Agent Weston's testimony and both the report she prepared following the search and a "time line" prepared by an agent monitoring the search at the command center. Since neither document mentions any consent to a search of the briefcase, defendant argues that the Court should not rely on Agent Weston's memory of events that occurred some three years ago. Agent Weston testified that she had a clear memory of requesting and obtaining defendant's consent to search the briefcase. The Court does not doubt the accuracy of the agent's memory on this point, for the certainty of her recollection was unshakable even on vigorous cross examination. The agent testified that she had a clear recollection of the events surrounding this particular search, as this was not a garden variety case but was a complicated, multi-district investigation that sticks out in her memory. In preparing their written reports, it is not uncommon for agents (few of whom are polished writers) to omit or overlook details that often take on unusual importance in suppression hearings of this kind. Neither the defendant nor attorney Robin (who were present when the briefcase was searched) offered any testimony to challenge the agent's recollection of the events. The fact that defendant submitted an *affidavit* in support of his motion denying that he ever gave consent to a search of the briefcase is not persuasive, for defendant elected not to expose himself to the rigors of cross examination on this point. In sum, the Court accepts the agent's testimony that defendant expressly consented to a search of the briefcase.

Even if defendant had not explicitly consented to the search of the briefcase, the search did not exceed the scope of defendant's consent. "When an individual gives a general statement of consent without express limitations, the scope of a permissible search is not limitless. Rather it is constrained by the bounds of reasonableness: what a police officer could reasonably interpret the consent to encompass." United States v. Strickland, 902 F.2d 937, 941 (11th Cir. 1990). The Eleventh Circuit has previously held that where a suspect consents to a search of the interior of his automobile and places no special restrictions on that search, it is reasonable for a law enforcement officer to open and examine a notebook found lying on the seat of that vehicle. United States v. De La Rosa, 922 F.2d 675, 679 (11th Cir. 1991). Similarly, given the general nature of the defendant's consent in this case, it was entirely reasonable for the agent to interpret defendant's consent to a search of his vehicle to include the briefcase lying in plain view on the seat of that vehicle. Defendant and his attorney were well aware that the agents were conducting a search of his residence pursuant to a warrant that authorized the seizure of financial documents and other papers. A briefcase is precisely the type of container

in which one would expect to find such documents and papers. Thus, even if the agent had not secured defendant's explicit consent to search the briefcase, it was reasonable for the agent to conclude that the scope of the consent included the briefcase.

## III. Conclusion

Defendant's motion to suppress the evidence seized during the warrant-based search of his residence and during the warrantless search of his briefcase is without merit and should be DENIED.

**SO REPORTED AND RECOMMENDED** this 1st day of **February, 2006.**

UNITED STATES MAGISTRATE JUDGE
**SOUTHERN DISTRICT OF GEORGIA**