FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2007 JUN 11 AM 9: 23

CLERK _____
SO. DIST. OF GA.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

UNITED STATES

v.                    405CR059

MARTIN J. BRADLEY III, et al.

## ORDER

### I. BACKGROUND

In this complex criminal RICO case, the Court has been endeavoring to tie up loose ends. *See, e.g., U.S. v. Bradley,* 2007 WL 1464058 (S.D.Ga. 5/17/07) (unpublished); doc. # 934. One loose end is the state of the Court's record. In *Bradley,* the Court

> directed [all parties] to review the sealed documents in the record. Two were sealed to enable the orderly liquidation of Bio-Med. Doc. ## 902, 905. Others were sealed to facilitate prosecution, protect fair trial rights, etc. *See, e.g.,* doc. ## 106, 143, 152. Now that the trial has occurred and Bio-Med has been sold, the Court should be shown (via briefs to be filed within 15 days of the date this Order is served) why it should not unseal all sealed record documents. *See Romero v. Drummond Co., Inc.,* 480 F.3d 1234, 1245-46 (11th Cir. 2007); *U.S. v. Ochoa,* 428 F.3d 1015, 1028-29 (11th Cir. 2005). Failure to respond shall indicate no opposition to any unsealing.

2007 WL 1464058 at * 10; doc. # 934 at 11. The Court has received just one objection within that 15-day period: "Martin J. Bradley Jr.'s Statement as to Documents Under Seal." Doc. # 950. Bradley wants the Court to keep sealed a variety of filings that rely on his personal medical information. *Id.* at 1-2. He cites no law, but argues that these documents include confidential medical and psychiatric information and/or confidential information set forth in the Pre-Sentence Investigation. Whatever interest the public at large may have in such a collateral matter is outweighed by the defendant's interest in maintaining the confidentiality of his medical and psychiatric records and of similar information set forth in the PSI.

Doc. # 950 at 2.

### II. ANALYSIS

#### A. Public Access

In both civil and criminal cases courts recognize a common-law public right of access to judicial proceedings and records. *U.S. v. Wecht,* 484 F.3d 194, 207-08 (3rd Cir. 2007) (civil); *U.S. v. Sattar,* 471 F.Supp.2d 380, 385 S.D.N.Y. 2006) (criminal).[1] That right stands in tension with litigant privacy, security (etc.) interests. Courts thus must draw lines.

---

[1] In addition, "[t]he press and public enjoy a qualified First Amendment right of access to criminal trial proceedings, *Ochoa,* 428 F.3d at 1028, and that extends to court records. *Wecht,* 484 F.3d at 208. Courts determine whether the public has a qualified First Amendment right to court documents by considering (1) whether the process has historically been open to the press and general public; and (2) whether public access plays a significant positive role in the functioning of the particular process in question. *Id.* at 208 n. 19. Finding a common law right obviates the need to engage in any First Amendment analysis. *Id.*

In that respect, courts routinely enter protective orders for personal medical information, *see, e.g. In re Zyprexa Injunction,* 474 F.Supp.2d 385, 394 (E.D.N.Y. 2007) ("Orders for sealing of documents are designed to permit litigants and the courts to examine a party's internal records, which may include embarrassing personal medical information, or valuable business secrets and commercial data, without unnecessarily exposing them to the public's and competitors' view"), though they cite a big distinction between private discovery materials and other litigation filings:

> The operations of the courts and the judicial conduct of judges are matters of utmost public concern, and the common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process. This right includes the right to inspect and copy public records and documents. This right of access is not absolute, however. The right of access does not apply to discovery and, where it does apply, may be overcome by a showing of good cause.

*Romero*, 480 F.3d at 1245 (quotes and cites omitted); *see also Zyprexa*, 474 F.Supp.2d at 414-17. Private discovery is exchanged between parties and typically not submitted to a court in quest of judicial action (*e.g.*, a ruling of some sort), so there is a principled reason to treat it differently than a motion, which typically invokes a court's powers and can precipitate, if not affect, a decision. *Romero*, 480 F.3d at 1245.

Motions and their attachments, then, are subject to public access, and it makes no difference whether a motion is characterized as dispositive. *Romero*, 480 F.3d at 1245; *Sattar*, 471 F.Supp.2d at 385 (letter from defendant's counsel transmitting psychiatric report concerning defendant, as well as report itself, were "judicial documents," to which common-law presumption of public access attached, notwithstanding that court did not find such documents to be useful and did not rely on them, where they were submitted to court to provide information with respect to crucial judicial function of sentencing), *cited in* Ann., *Restricting access to judicial records*, 175 A.L.R. 1260.

Hence, F.R.Civ.P. 26 discovery, or any other information submitted with a motion, is likewise subject to the presumption of public access. *Romero*, 480 F.3d at 1245. And documents that directly affect an adjudication and play a significant role in determining a litigants' substantive rights are entitled to the strongest presumption. *Sattar*, 471 F.Supp.2d at 385.

Note, too, that the circumstances that lead to sealing can change, so that "the secrecy interests [supporting the continuation of such sealing] deserve less protection than they did when the [original sealing or protective] order was granted." *Arnold v. Pennsylvania, Dept. of Transp.*, 477 F.3d 105, 109 (3d Cir. 2007) (quotes and cite omitted); *see also id.* (in response to a newspaper's request to vacate a confidentiality order protecting information contained in a private non-party's discovery response concerning entertainment provided by a non-party to employees of state agency, district court properly exercised its discretion based on public interest factor[2] in partially

---

[2] In *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994), the Third Circuit articulated a series of factors, including the public interest, that courts should apply in finding "good cause" to seal documents such as through the use of protective orders. *See Arnold*, 477 F.3d at 108.

lifting order to permit disclosure of names of state employees whose attendance was confirmed and locations and costs of entertainment, but maintaining confidentiality as to names of non-party employees involved and names of invited state employees whose attendance was not confirmed).

A party may overcome the presumption of public access by showing an overriding interest based on findings that closure is essential to preserve higher values, and that the sealing is narrowly tailored to serve that interest. *Ochoa*, 428 F.3d at 1030. *Ochoa* never did define "higher values," but the *Sattar* court noted that, in deciding whether to unseal a medical-data-laden letter submitted to influence sentencing, "disclosure of [highly-personal family] matters would not promote any of the values associated with public scrutiny of the sentencing process." *Sattar*, 471 F.Supp.2d at 388.

Nevertheless, general assertions are not enough. The party wishing to seal a court record must be specific because permanent sealing (sought here) must be narrow. *Keenan v. Town of Gates*, 414 F.Supp.2d 295, 296 (W.D.N.Y. 2006) (alleged presence of confidential and protected medical and legal information regarding plaintiff in filings in malicious prosecution suit was insufficient to overcome presumption of access to judicial documents under First Amendment and common law, particularly where plaintiff sought sealing of entire record rather than individual documents and did not identify confidential information with any particularity), *cited in* 66 AM.JUR.2D *Records and Recording Laws* § 32 (April 2007); *Jaufre ex rel. Jaufre v. Taylor*, 351 F.Supp.2d 514, 517-18 (E.D.La. 2005) (when courts find that privacy interest justifies restricting the public's access to judicial a record. they must restrict access in way that will minimize burden on public's right, such as by sealing or redacting only those records that contain sensitive information).

Specificity, then, is what a sealing court needs in order to surmount the public's otherwise overriding interest against sealing, and to make findings specific enough to enable appellate review. *Keenan*, 414 F. Supp.2d at 296; *see also U.S. v. Vives*, 2006 WL 3792096 at * 1 (S.D.Fla. 12/21/06) (unpublished) ("The government has made this showing concerning portions of DE# 105. The Court finds that the confidential informant number could hinder government investigations and lead to the identification of a cooperating witness"); 2 SMOLLA & NIMMER ON FREEDOM OF SPEECH § 25:8 (April 2007).

Note that the mere risk of embarrassment alone may be trumped by the public's interest in being able to ascertain how and why judges and other government officials do what they do. *Schoffstall v. Henderson*, 223 F.3d 818, 822,

---

The *Pansy* Court identified the following factors of the good cause balancing test: (1) the interest in privacy of the party seeking protection; (2) whether the information is being sought for a legitimate purpose or an improper purpose; (3) the prevention of embarrassment, and whether that embarrassment would be particularly serious; (4) whether the information sought is important to public health and safety; (5) whether sharing of the information among litigants would promote fairness and efficiency; (6) whether the party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public. *Id.* at 787-88.

*Id.*

3

827 (8th Cir. 2000) (court did not abuse its discretion by declining to seal plaintiff's medical records, which defendant employer sought to discover in employment discrimination action, and by denying protective relief, despite claim that plaintiff's supervisor had disclosed to her coworkers information regarding her medical record and deposition statements); *Ashworth v. Bagley*, 351 F.Supp.2d 786, 789-92 (S.D.Ohio. 2005) (common law presumption in favor of access to court documents supported denial of death-sentenced habeas petitioner's motion to seal reports of mental health experts appointed by court to evaluate petitioner's competency in connection with his request to abandon his petition; interests of permitting public access to competency reports, including interest in public's understanding of every stage of the process to which capital defendants are entitled, far outweighed petitioner's interests in denying access, particularly where petitioner articulated no legitimate harm that might result from public access); *Jaufre*, 351 F.Supp.2d 518-19 (sealing of judicial record of proceedings was not warranted following settlement of action alleging that court school official administered excessive corporal punishment against minor student, with exception of photographs of student's injuries and student's deposition testimony, even though record contained references to student's medical, psychiatric, and psychological conditions, his family problems, his involvement in potential criminal mischief, and disability that necessitated his placement in disciplinary school; other parents had interest in learning how school officials addressed issue, student did not submit memorandum in support of motion to seal, and record contained only general information about and references to student's psychological conditions and behavior).

**B. "Equal Justice"**

The above principles are perhaps best grasped through some hypothetical scenarios. Suppose a well-known, "spoiled-brat" celebrity is sentenced to 45 days in jail for driving on a license suspended because of a DUI conviction. Suppose further that, 3 days into her jail term, the sentencing judge releases her to serve the remaining 42 days in "house arrest" because her doctor visited her in jail and his sealed report supported a successful, sentence-modification motion. Finally, suppose in her moving papers the celebrity cites only an unspecified "eating disorder" that the jail is not equipped to address. A substantial portion of the public then reacts in outrage, decrying the perceived unequal treatment under the law.

*That* would be an instance where the public interest in access to what a judge has relied upon would trump any claimed, medical-records privacy interest. Through such access, the public is able to assess the judge's competence, whether the justice system has been exploited, etc. Such "informational oxygen" is indispensable to a court system that cannot function without public trust and respect.

The same result obtains where a death-sentenced inmate wins repeated stays of execution from a "liberal" judge following submission of sealed psychiatrist reports certifying that the inmate is too incompetent to be executed. *See Ford v. Wainwright*, 477 U.S. 399, 408 (1986) ("The Eighth Amendment prohibits the State from inflicting the penalty of death upon a prisoner who is insane").

Finally, consider the criminal case where a multi-millionaire defendant, exposed to what is tantamount to a life sentence with no parole, finances a top tier legal defense. Counsel then

4

files sealed, legal-responsibility-avoiding/diminishing, mental health data based motions in quest of favorable treatment of some sort (to sever his case from other defendants, for more lenient sentencing, etc.). The public obviously will want to know if he succeeded in influencing judicial treatment of him, and whether his mental health claims were bogus or bona fide. Trust and respect for an otherwise *public* court system thus is preserved by ensuring public records access to what that defendant filed.

### C. Bradley Jr.'s Privacy Interest

In this criminal case, of course, there was no civil discovery, but instead submissions in support of motions, for example, to determine whether the Court should sever Bradley Jr.'s case, and whether he should receive a lower sentence. *See* doc. # 950 (collecting cites); *see also* doc. ## 337, 339, 346, 347, 356, 723 ("Mr. Bradley, Jr.'s age, health problems, and other characteristics are strongly mitigating factors with regard to any potential for recidivism").

Again, in order to seal (and leave sealed) such documents, this Court must make findings, on the record, to rebut the presumption of openness that ordinarily obtains in criminal proceedings. *Ochoa*, 428 F.3d at 1030. But Bradley Jr. has not supplied the requisite, item-by-item "redaction specificity" here, so the Court overrules his objection to unsealing.[3]

For that matter, defendant (personally and through counsel) publicly articulated some if not all of his claimed mental deficits during his sentencing. *See Jaufre*, 351 F.Supp.2d at 518 ("previous public access weighs in favor of continued public access"); *Ashworth*, 351 F.Supp.2d at 791 (noting that much of the "sensitive and private" information in play there was "already a matter of public record"). And unlike the pretrial phase of this case, there is no longer any "jury pool to taint with sensitive or private information that might or might not be admissible at a criminal trial." *Ashworth*, 351 F.Supp.2d at 792.

### III. CONCLUSION

Accordingly, the Court **OVERRULES** defendant Martin Bradley Jr.'s objection (doc. # 950) to this Court's announced intent to unseal the entire record of this case. To preserve his appellate remedy, however, the Court will stay this ruling for ten days. If he fails to pursue appellate relief by 6/21/07, the Clerk shall unseal *all* sealed documents in the record. In the meantime, and since the Court has received no other objections, the Clerk shall unseal all sealed matters that were not sealed at Bradley Jr.'s request. *E.g.*, doc. ## 142 - 145, 149.

This 11th day of June, 2007.

_____
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[3] Indeed, the defendant has even failed to cite all of the documents that he wants to remain sealed. *See, e.g.*, doc. # 950 at 1(h) (citing his motion to seal, doc. # 720 (mislabeled "722"), plus the Court's Order granting same, doc. # 722, but not the actual document sealed, doc. # 723). Counsel must remember that "[j]udges are not like pigs, hunting for truffles buried in [the record]." *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Bare-bones motions/briefs often engender bare-bones reception.